IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.               Criminal Action Nos. 5:90CR115-01 and 5:94CR5
                                                         (STAMP)
MICHELLE LORAY BANKS,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DIRECTING THE CLERK TO FILE DEFENDANT'S LETTERS
AS A PETITION FOR EXPUNGEMENT OF FEDERAL CONVICTION
AND DENYING PETITION FOR EXPUNGEMENT OF FEDERAL CONVICTION**

I.  Procedural History

The pro se[1] defendant, Michelle Loray Banks, pled guilty to one count of maintaining a residence for the distribution of "crack" cocaine within 1,000 feet of a school in violation of 21 U.S.C. §§ 845(a) and 856 in September 1990.  The defendant was then sentenced to a split sentence of ten months whereby she would serve five months incarcerated and five months on home confinement.  Further, the defendant was to complete three years of supervised release.  The defendant's supervised release was later revoked because of a violation of the standard condition of supervised release which states that a defendant shall not commit any crime while on supervised release.

---

[1] Pro se – "One who represents oneself in a court proceeding without the assistance of a lawyer." Black's Law Dictionary 1341 (9th ed. 2009).  This Court notes that the defendant was represented in the underlying criminal actions but has filed the petition for expungement to this Court pro se.

The crime the defendant had committed while on supervised release was the violation of 18 U.S.C. § 930(a), possession of a dangerous weapon in a federal facility. The defendant's supervised release was revoked and the defendant was sentenced to three months of incarceration. In the separate criminal action for the violation of 18 U.S.C. § 930(a), the defendant entered a plea agreement with the government and was later sentenced by this Court to six months of incarceration. At the defendant's sentencing hearing for her final conviction in this Court (to date), the defendant was adjudged under the United States Sentencing Guidelines as having a criminal history category of IV based on eight criminal history points.[2]

## II. Facts

The defendant has mailed two letters to this Court asking that this Court expunge her federal criminal convictions. The defendant's first letter was received on May 9, 2013, and the defendant's follow-up letter was received on October 7, 2013. In her letters, the defendant states that she wishes to have her federal criminal convictions expunged so that she may pursue a

---

[2]The Court notes that, from its own records, the defendant also has two underlying state convictions. In 1990, the defendant pled guilty to obstruction in the Ohio County, West Virginia Magistrate Court and was sentenced to five days in jail. Further, in 1994, the defendant was found guilty by a jury of the delivery of a controlled substance within 1,000 feet of a school in the Circuit Court of Ohio County, West Virginia. The defendant was sentenced to 1-5 years of incarceration. This Court has no further information concerning those state convictions.

career as a registered nurse. The defendant conveys to this Court that she accepts responsibility for what she did and has since changed her life by entering the medical field. She further contends that she is entitled to expungement because she is unable to obtain employment as a registered nurse because of her felony record.

The Court believes that based on the content of the defendant's letters, they should be treated as a petition to expunge a federal criminal conviction. Thus, this Court will perform an analysis under that belief and finds, based on the following, that this Court lacks jurisdiction to hear the defendant's petition.

## III. Applicable Law

Federal courts are courts of limited jurisdiction, and can only exercise the authority conferred by the Constitution or by statute. Additionally, although 18 U.S.C. § 3231 provides "district courts with original jurisdiction 'of all offenses against the laws of the United States,' a district court's jurisdiction under this statutory provision ends once the judgement of conviction is entered." United States v. Mitchell, 683 F. Supp. 2d 427, 432 (E.D. Va. 2010); 18 U.S.C. § 3231. Thus, no federal statute or regulation generally provides for expungement of a federal offense. Stoute v. United States, CIV.A. RDB-11-1220, 2011 WL 2037672 (D. Md. May 24, 2011).

Further, federal jurisdiction "is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Consequently, a district court must have ancillary jurisdiction to complete the expungement of a federal offense where "there is no explicit constitutional or statutory grant of jurisdiction." United States v. Mitchell, 683 F. Supp. 2d 427, 433 (E.D. Va. 2010).

## IV. Discussion

The defendant states that she is seeking expungement of her federal criminal convictions. The defendant only argues that she is entitled to expungement because she is attempting to obtain employment as a registered nurse and is unable to do so with the criminal convictions on her record. Further, the defendant states that she has worked in the medical field for twelve years after obtaining her Associate in Applied Science degree with a focus in Medical Assistance and Office Management. Finally, she states that she has not attempted to sit for the state board testing because it clearly stated that "no one with a felony conviction would be eligible for licensure." Based on the following analysis, however, this Court finds that the petition for expungement of her federal conviction should be denied as this Court lacks jurisdiction to review the defendant's petition for expungement.

A.  *Kokkonen* and Ancillary Jurisdiction

The concepts and boundaries of ancillary jurisdiction were explained in the United States Supreme Court's analysis in Kokkonen v. Guardian Life Insurance. Ancillary jurisdiction, or as it is sometimes called, "ancillary enforcement jurisdiction," is the concept under which federal courts maintain jurisdiction over related proceedings that are technically separate from the claims or causes of action in the initial case that invoked federal subject matter jurisdiction.  Kokkonen, 511 U.S. at 378-89.

Significantly, the Supreme Court held that ancillary jurisdiction may be asserted for two purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Id. at 379-380 (citations omitted).  Thus, in the dispute that arose in Kokkonen over the enforcement of the terms of a settlement agreement, the Supreme Court found that it did not have ancillary jurisdiction because that dispute did not fall within the two purposes listed above.  Id. at 381-82.  Similarly, as discussed more fully below, because the expungement of a conviction does not fall within an area of statutory or constitutional jurisdiction or within the two purposes provided for under ancillary jurisdiction, this Court may not exercise its limited jurisdiction.

5

B.  Expungement of a Federal Conviction

The defendant states in her letters that she is petitioning the Court to expunge her federal conviction. To reiterate, in order for this Court to grant expungement of the defendant's federal conviction, it must have ancillary jurisdiction.

The Supreme Court has not directly addressed whether federal courts have jurisdiction to expunge criminal convictions solely for equitable reasons. Currently, the federal circuit courts are "superficially" split as to whether ancillary jurisdiction gives a federal district court the authority to expunge federal convictions or records solely upon equitable grounds. This Court refers to the split as "superficial" because only one court, the United States Court of Appeals for the Seventh Circuit, has revisited the issue post-Kokkonen.[3]  Importantly for this case, however, the Fourth

---

[3]The United States Court of Appeals for the Third, Sixth, Eighth, and Ninth Circuits have all held that federal district courts do not have ancillary jurisdiction to expunge criminal records on equitable grounds. United States v. Lucido, 612 F.3d 871, 873-878 (6th Cir. 2010); United States v. Rowlands, 451 F.3d 173, 178 (3d Cir. 2006), cert. denied, 127 S. Ct. 598, 166 L. Ed. 2d 431 (U.S. 2006); United States. v. Meyer, 439 F.3d 855, 862 (8th Cir. 2006); United States. v. Dunegan, 251 F.3d 477, 478 (3d Cir. 2001); United States v. Sumner, 226 F.3d 1005, 1014 (9th Cir. 2000). The other circuits, the Second, Fourth, Seventh, Tenth, and District of Columbia Circuits, have found that in extreme cases equitable expungement can be granted by a federal district court (but all before Kokkonen, with the exception of Flowers). United States v. Flowers, 389 F.3d 737, 739 (7th Cir. 2004); Livingston v. United States Dept. of Justice, 759 F.2d 74, 78 (D.C. Cir. 1985); Allen v. Webster, 742 F.2d 153, 154-155 (4th Cir. 1984); United States v. Schnitzer, 567 F.2d 536, 539 (2d Cir. 1977); United States v. Linn, 513 F.2d 925, 927 (10th Cir. 1975).

6

Circuit held in Allen v. Webster (and has not overturned that ruling or reconsidered it) that in considering whether or not expungement should be granted on equitable grounds:

> courts must be cognizant that the power to expunge "is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case." United States v. Linn, 513 F.2d 925, 927 (10th Cir.), cert. denied, 423 U.S. 836, 96 S. Ct. 63, 46 L. Ed. 2d 55 (1975). Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial determination of probable cause impossible, Sullivan v. Murphy, 156 U.S.App.D.C. 28, 478 F.2d 938 (1973); where the court determined the sole purpose of the arrests was to harass civil rights workers, United States v. McLeod, 385 F.2d 734 (5th Cir. 1967); where the police misused the police records to the detriment of the defendant, Wheeler v. Goodman, 306 F. Supp. 58 (W.D.N.C. 1969); or where the arrest was proper but was based on a statute later declared unconstitutional, Kowall v. United States, 53 F.R.D. 211 (W.D. Mich. 1971). Id. at 539-540.

Webster, 742 F.2d at 155.

Some district courts within the Fourth Circuit, in contrast, have held that Webster is not applicable to expungement cases in which the defendant is seeking expungement of a federal conviction. For instance, in United States v. Mitchell, 683 F. Supp. 2d 427 (E.D. Va. 2010), the court held that because (1) Webster came after Kokkonnen and (2) Webster dealt with a criminal conviction that was later acquitted, it is not applicable to cases that (1) take place after Kokkonnen and (2) deal with criminal convictions that have not been acquitted. Mitchell, 683 F. Supp. 2d at 430. Other Fourth Circuit district courts have adopted the reasoning of Mitchell. United States v. Harris, 847 F. Supp. 2d 828, 833 (D.

7

Md. 2012); Sambou v. United States, 2010 WL 3363034 (E.D.N.C. Aug. 24, 2010).

This Court finds that the reasoning in Mitchell is sound and should be applied to this case. Webster did not address the issue of ancillary jurisdiction; pre-dated Kokkonen, and thus did not discuss the implications of that pronounced ancillary jurisdiction standard; and dealt with a criminal conviction that had been acquitted. Those facts make Webster wholly distinguishable from the case at hand, where a convicted defendant seeks expungement that can only be given if this Court has ancillary jurisdiction. Further, as the court in Mitchell discussed, an expungement of conviction petition does not fall within the two purposes set forth in Kokkonen.

First, the defendant's expungement petition is not interdependent with the defendant's criminal convictions under 18 U.S.C. § 3231. The underlying convictions are "wholly separate and distinct from the equitable circumstances that defendant contends justify the expungement of [her] conviction[s]." Id. at 433. Second, the expungement of a criminal conviction does not "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Kokkonen, 511 U.S. at 379-380. Congress recognized a "compelling public need" to retain criminal records when it authorized the Department of Justice to acquire and preserve such records. United

States v. Schnitzer, 567 F.2d 536, 539 (2d Cir. 1977); 28 U.S.C. § 534(a) (authorizing the United States Attorney General to collect and exchange criminal records). The retention of criminal records is essential for an effective criminal identification system, as well as for purposes of punishment and deterrence. Id. Further, as the court noted in Mitchell:

> a conclusion that federal courts have ancillary jurisdiction to expunge criminal convictions for equitable reasons would allow district courts across the country to develop possibly inconsistent equitable standards for ordering expungement. This in turn might result in the expungement of criminal records in some districts and the denial of expungement in other districts, leading to an impairment of the reliability and integrity of federal criminal conviction records.

Mitchell, 683 F. Supp. 2d at 433.

This Court, therefore, does not have ancillary jurisdiction to review the defendant's petition for expungement of her federal criminal convictions. Thus, this Court does not have the authority to grant her petition for expungement and must deny it.[4]

---

[4] The Court notes that although the defendant's record cannot be expunged by this Court, the defendant does have the option of seeking a Presidential pardon pursuant to 28 C.F.R. § 1.1. Currently, the federal government employs federal pardon attorneys who review petitions for Presidential pardon. The Guide to Judiciary Policy explains the role of a pardon attorney as follows: "under the direction of the Attorney General, a Pardon Attorney receives and reviews all petitions for . . . pardon after completion of sentence [,] . . . initiates the necessary investigations, and prepares the recommendation of the Department of Justice to the President." 4 § 480.10, Guide to Judiciary Policy, Online Federal Judiciary Center (last revised Oct. 16, 2012). The defendant is hereby informed that if she wishes to pursue a presidential pardon she should visit the "Office of the Pardon Attorney" web page at http://www.justice.gov/pardon/ for

9

## V. Conclusion

Accordingly, the defendant's petition for expungement of her federal criminal convictions is DENIED. Further, the Clerk is DIRECTED to file the defendant's letters dated May 9, 2013, and October 7, 2013, as a petition for expungement of a federal conviction.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se defendant by certified mail, to counsel of record herein, and to the United States Probation office.

DATED:   October 29, 2013

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE

---

more information. This Court would caution the defendant, however, that this does not mean that such a claim has merit procedurally or substantively.

October 07, 2013

Michelle Banks
1717 Alona Drive Apt. #5
Columbus, OH 43224
(614) 266-7251

The Honorable Judge Stamp
United States District Court Northern WV
PO Box 471
Wheeling, WV 26003

Dear Judge Stamp:

Thank you for taking the time to read my letter, I realize that you are a busy individual. My name is Michelle Loray Banks and I need your help! A few months ago I sent a letter expressing my desire for the Expungement of my Federal convictions. I simply want the opportunity to live life without restrictions and limitations; while fulfilling my dream of becoming a Registered Nurse.

EVERYBODY makes mistakes, no one is perfect. I am not here to blame anyone, but to hopefully enlighten you on how this travesty from 2 decades ago has <u>completely</u> put me at a disadvantage and prohibited me from reaching my dream 23 years later. The incidents happened when I was young, ignorant, impressionable and foolish! Certainly this was a life lesson learned. At 42 years of age, I know that I am not that same person. I fully accept responsibility for my (prior) actions and have paid my debt to society. Nevertheless, every time I attempt to better myself through education and employment, I am faced with the crippling opposition of my past convictions. I need you to understand that we are all human beings and people can change.

In closing, I humbly ask you to consider my request and grant my *"petition for expungement"*. A favorable decision would enable me to secure employment, provide for my family, achieve a personal goal and re-establish my purpose in life. I appreciate your consideration and support concerning this matter.

Respectfully Submitted,

*[signature: Michelle L. Banks]*

Michelle Banks                                             May 09, 2013
1717 Alona Drive Apt. 5
Columbus, OH 43224
(614) 266-7251


Dear Clerk of Courts;

My name is Michelle Loray Banks and I need your help. A few weeks ago, I contacted your office (West Virginia Northern District Clerk of Courts) in regards to getting a Petition for Expungement. At that time, I was told to put in writing what I needed and mail it to the court.

I would very much like to fulfill my career goal to become a Registered Nurse; however as a result of my past criminal record I have faced numerous rejections from employers and been terminated. I would very much like to continue my education in a field that I am passionate about; in addition to obtaining meaningful employment as Registered Nurse and provide for my family. I cannot abandon my dream and give up my passion.

I have worked in the medical field for the past 12 years, and I love what I do; but I was born to be a Nurse. In order to even consider pursing my dream, I need the court to grant my petition for Expungement. I admit, I have made some very ignorant and foolish choices in life; and in turn I have to live with the stigma of the convictions. Since that time, I have worked very hard to turn my life around.

Since my release in September 1997, I have been a positive and productive member in society, in my church and in my children's school. I thank God every day for my freedom and another chance to be with my family. I realize that it could have been a lot worse. On May 5, 1998, I packed my belongings in my car and moved to Philadelphia, Pennsylvania. It was there that my life began to turn around; I found a decent job, regained custody of my children, and completed college with an Applied Associates in Science, with a focus in Medical Assistance and Office Management. I didn't even attempt to sit for the State Board testing, because it <u>clearly</u> stated that "no one with a felony conviction would be eligible for licensure." Although, I lied on several applications to obtain employment over the years, I did so in efforts to support my children and not revert back to the old because they only did background checks for the particular state in which employment was desired and I needed to work to support my children. I do not want to continue living a lie and not full-flilling my intended purpose in life. In fact, I refuse to live with this stigma another day. I am willing to do whatever it takes to appease the court and get the petition for Expungement. fulfill the gift of Nursing that **GOD** has blessed me with.

My hearts 'desire is to be a **Registered Nurse**. Caring for sick people in general is my passion. It's what I live for! The intrinsic gratification I feel when I help others, leaves me speechless and I can only smile, with tear-filled eyes. At this moment, the **ONLY** barrier between **EVER** making my dream, a reality is... my past felony convictions. I apologize; **I AM NOT** that same person.


Respectfully Submitted,


Michelle L. Banks

# Ohio Board of Nursing

www.nursing.ohio.gov

17 South High Street, Suite 400 • Columbus, Ohio 43215-7410 • (614) 466-3947

# CRIMINAL HISTORY FACT SHEET

Currently, there are eleven offenses that are *automatic bars* to obtaining a nursing license for applicants who entered a prelicensure nursing education program after June 1, 2003. This means that the Board of Nursing (Board) is prohibited from issuing a license to a person who has pled guilty to, been convicted of, or has a judicial finding of guilt for one of the offenses listed below.

•Aggravated Murder • Murder • Voluntary Manslaughter • Felonious Assault •Kidnapping • Rape • Aggravated Robbery • Aggravated Burglary • Sexual Battery • Gross Sexual Imposition • Aggravated Arson • or a substantially similar law of another state.

In addition, the Board may propose to deny an application, or place restrictions on a license granted, for a conviction of, a plea of guilty to, a judicial finding of guilt of, a judicial finding of guilt resulting from a plea of no contest to, or a judicial finding of eligibility for intervention in lieu of conviction for the following: (1) any felony (that is not an absolute bar); (2) a crime involving gross immorality or moral turpitude; (3) a misdemeanor drug law violation; or (4) a misdemeanor in the course of practice. **In regard to these four types of offenses, the Board is unable to advise or give a definitive answer about the effect a criminal history will have on the ability to obtain a nursing license in the State of Ohio.**

The Board does not have the authority to make a determination or adjudication until an application has been filed. If an applicant has a criminal history, the Board conducts a thorough investigation and considers a number of factors, including but not limited to: whether the applicant has made restitution, completed probation and/or otherwise been rehabilitated; the age of the offense; the facts and circumstances underlying the offense; and the total number and pattern of offenses.

Please also be advised that although the Board may grant a license to an applicant who has a criminal offense history, an individual may be restricted from working in certain settings based on his or her criminal history due to federal and state laws, which require criminal records checks prior to employment in certain settings, and which may impose absolute or discretionary bars to employment in certain patient care settings, for example, in facilities or settings involving care provided to older adults or children. *See, e.g., Ohio Administrative Code Chapter 3701-13.*

Similarly, the Board cannot answer questions regarding one's eligibility to attend nursing school or participate in clinical instruction. Nursing programs vary in regard to enrollment criteria, so it is recommended that you contact the nursing program to determine whether you are eligible to enroll.



# CHAMBERLAIN
## College of Nursing

July 1, 2013

Michelle Banks
1717 Alona Dr
Apt 5
Columbus, OH 43224

Dear Michelle,

Chamberlain College of Nursing regrets to inform you that based on our admission criteria, we are unable to consider you for enrollment at this time. Your acceptance was conditional upon clearance of the background and drug screening process, and unfortunately the results indicate that you would not be eligible based on Chamberlain's clinical placement agreements. Because much of the program for which you applied has extensive clinical hours, we do not feel it is in your or our best interest to proceed with enrollment.

This decision was made by Chamberlain based on the information we received from Talentwise, our background-screening vendor. Talentwise did not make this decision and is unable to provide you with the specific reasons for it; however, they can help to verify that the information discovered and reported is accurate.

If you have not already received a copy of this report, one will be sent to you. If you do not receive a copy of this report or if you feel the report is inaccurate or incomplete, you have the right to dispute the accuracy or completeness of the information contained in the report(s) by contacting Talentwise directly at:

Talentwise
PO Box 1048
Bothell, WA 98041
877.982.9888

In accordance with the Fair Credit Reporting Act, you have previously received a copy of this information and a copy of your rights under the Act.

Chamberlain is dedicated to enrollment processes that focus on empowering students for successful outcomes and preparing graduates for careers in the nursing profession. We feel that in having you incur the expense of time, energy and tuition, that we would not be servicing you to our best ability if we are unable to assist you in securing clinical placement and/or prepare you for future requirements based on State Boards of Nursing or for future employment as a registered nurse. We hope you understand our position regarding this decision. Thank you for your interest in Chamberlain College of Nursing. We wish you the best in your future endeavors.

Sincerely,

Judith Kimchi-Woods, PhD, MBA, RN, CPNP, CPHQ
President, Columbus Campus
Chamberlain College of Nursing

Accreditation and Approvals:

Chamberlain College of Nursing is accredited by The Higher Learning Commission (HLC) and is a member of the North Central Association of Colleges and Schools. ncahlc.org. HLC is one of the six regional agencies that accredit U.S. colleges and universities at the institutional level. The Bachelor of Science in Nursing degree program and the Master of Science in Nursing degree program are accredited by the Commission on Collegiate Nursing Education (CCNE), One Dupont Circle, NW, Suite 530, Washington, DC 20036, 202.887.6791. The Associate Degree in Nursing program at the Columbus location is accredited with conditions by the Accreditation Commission for Education in Nursing (ACEN), 3343 Peachtree Road NE, Suite 850, Atlanta, GA 30326, 404.975.5000. Accreditation provides assurance to the public and to prospective students that standards of quality have been met.

Chamberlain College of Nursing, 2450 Crystal Drive, Arlington, VA 22202 is certified to operate by the State Council of Higher Education for Virginia, 101 N. 14th Street, 10th Floor, James Monroe Building, Richmond, VA 23219, 804.225.2600. Chamberlain College of Nursing has provisional approval from the Virginia Board of Nursing, Perimeter Center, 9960 Mayland Drive, Suite 300, Henrico, VA 23233-1463, 804.367.4515. AC0107

Program availability varies by location. Chamberlain reserves the right to update information as it becomes available. Information is current at the time of publication. For the most updated accreditation information, visit chamberlain.edu/accreditation. Comprehensive consumer information is available at chamberlain.edu/studentconsumerinfo.

©2013 Chamberlain College of Nursing, LLC. All rights reserved.

1350 Alum Creek Drive · Columbus, OH 43209 · chamberlain.edu



July 8, 2013

**MICHELLE LORAY BANKS**
**1717 ALONA DRIVE APT. 5**
**COLUMBUS, OH 43224**

Dear Michelle;

You previously authorized Chamberlain College of Nursing ("Chamberlain") to obtain information from the following agencies, Consumer Report, Credit report and/or Consumer Investigative Report ("Report"). This letter is to confirm that the information contained in the Report jeopardizes your eligibility for clinical placements required for completion of a degree program at Chamberlain College of Nursing. Chamberlain has received a copy of the Report. As a result, you will be receiving information from Chamberlain College of Nursing within five business days regarding the effect of your background check and/or drug screen results on your admission to Chamberlain.

In accordance with the Fair Credit Reporting Act (FCRA) we previously provided you a copy of the Report and your rights under the FCRA, including an opportunity to dispute its accuracy. The Report was prepared by one of the below Consumer Reporting Agencies marked by an "X".

| X | Based on information obtained in the Report provided by: |
|---|---|

        TalentWise Solutions LLC ("TalentWise")
        dispute@talentwise.com
        Ph: 877.893.1666
        Fax: 425.974.2206
        PO Box 1048, Bothell, WA 98041-1048
        www.talentwise.com

Please understand that the Consumer Reporting Agency which furnished Chamberlain College of Nursing with the Report does not make the enrollment eligibility decision and cannot provide you with the specific reasons why you may not be eligible to enroll in the degree program you selected.

Regardless of the reporting information outcome, feel free to contact your admissions representative with any questions.

Under federal law, you have the right to obtain an additional complimentary copy of the report from the above Consumer Reporting Agency within sixty (60) days of your receipt of this letter.

Sincerely,

Chamberlain College of Nursing